ROBERT BUEDINGEN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 5855. Promulgated February 28, 1927.

1. Cost of architect's plans for a building, never used, allowed as a deduction where a different building was erected during the year from other plans.

2. Cost of temporary alterations and construction, torn out and replaced during the year, allowed as a deduction.

3. Excessive cost of erecting a building, caused by necessity for prompt completion and by prevailing high costs of labor and material, may not be deducted as a business expense.

*H. Earlton Hanes, Esq.*, for the petitioner.
*A. H. Murray, Esq.*, for the respondent.

The petitioner appeals from the determination by the Commissioner of a deficiency of $14,155.79 income tax for 1920 and an overassessment of $318.19 for 1921. With respect to 1920, he alleges as error the refusal of the Commissioner to permit the deduction of any part of an amount of $39,119.86 as expenses, and the determination of the Commissioner that a profit of $12,108.95 was realized on the disposition of certain real estate. No error is alleged with respect to 1921.

### FINDINGS OF FACT.

The petitioner is an individual with his principal office in Rochester, N. Y. In 1920 he was engaged in the manufacture of paper boxes.

In 1918 he purchased a three-story and basement building on Canal Street, Rochester, which he used as a factory building. In the fall of 1919 his business had grown to such proportions that this building was inadequate. He consulted his bankers with reference to borrowing money for a new building and was promised a loan. For the purpose of building, he purchased a plot of ground on Clinton Avenue, North, Rochester. He employed an architect to draw plans for the new building, had specifications drawn and estimates made. In the opinion of the bankers the estimates were too high and they refused to finance the building. The petitioner thereupon, in 1920, discarded the plans and specifications, which had cost him $1,280. These plans were not thereafter used.

The petitioner had accepted orders in excess of the capacity of his factory and to complete the contracts the erection of a temporary building on the Clinton Avenue property was begun in February, 1920. This building was completed in the spring of 1920 and was put into use as a part of the factory.

In the meantime, an architect was employed to prepare other plans for a permanent building on the Clinton Avenue property to be constructed around the temporary building. A loan was secured by the petitioner from his bankers and the contract was let for the building of such permanent factory and the construction was immediately begun. As a part of the arrangements for the loan the bankers insisted that the Canal Street factory be sold, and in July, 1920, a contract for the sale of this property was entered into with the provision that possession should be given in December, 1920. To vacate the old factory and at the same time continue his operations, it was necessary for the petitioner to occupy the new building by sections as it was finished. In order to accomplish this it was necessary to cover sections undergoing completion with a temporary roof and inclose the finished sections with temporary partitions. The

temporary construction was removed as the building progressed. A storm which damaged the temporary roofing caused the floor to become wet and to swell, as a consequence of which a section had to be replaced.

When the permanent building was completed the temporary building adjoining it was connected to it and changes were made in order to operate the two buildings as a unit. Temporary partitions were removed and replaced; temporary electric wiring was changed and made permanent; the heating system was changed from the temporary building to the permanent building; a temporary sewerage system which had been employed in the temporary building was discontinued and a permanent system installed throughout the two buildings. After proper allowance for salvage value, the cost of these operations was $6,666.59. No part of such cost represents material, labor, fixtures, or machinery entering into the completed buildings. All of such cost was due to the temporary nature of the arrangements which it was necessary to make during the year 1920, and no part of such cost was of use or value to the petitioner after the close of the year 1920. In computing the deficiency the Commissioner determined that a taxable gain of $12,108.95 was realized from the sale of the Canal Street property and refused to allow the petitioner a deduction for any part of the additional expense incurred in the operation of his business in the temporary quarters, a deduction for which was claimed by the petitioner in the amount of $39,119.86.

OPINION.

PHILLIPS: The facts are recited above. We are of the opinion that the amount paid the architect for plans and specifications for a factory building, which plans and specifications were discarded in 1920 and not thereafter used, is deductible. The architect who drew these plans also drew the plans for the building which was completed, but as a witness he testified that the previous plans were of little or no aid to him, were not used, and that the full amount of the architect's fee was charged for the second plans without reference to the fee charged for those discarded. We are also of the opinion that the amounts expended for temporary partitions, roofing, heating, sewerage, etc., in 1920 are deductible. Upon the hearing there was detailed evidence concerning each item entering into the amount allowed. All the expenditures were for work of a temporary character made necessary by the condition of operations during the period of removal, no part of them represented the cost of the finished buildings, and the temporary construction had no use beyond the taxable year involved. In such circumstances, these

79705°—28——22

items also constitute ordinary and necessary expenses for the taxable year and are deductible as such. The Commissioner disallowed them because there had been no segregation from a larger amount claimed and disallowed.

The petitioner also claims that, because of the extraordinary conditions existing in the building trades in 1920, and because of the necessity of expediting completion of the temporary building and of the now permanent building, large premiums or bonuses were necessary to procure materials. It is further contended that, because of this situation and the high wages paid in the building industries, the cost of the buildings was excessive and exceeded the reasonable cost thereof, assuming that they had been built under normal conditions, by approximately $32,500. It is claimed that this amount constitutes a deduction either as an ordinary and necessary expense of conducting the business, or as a loss brought about by the sale of the Canal Street property. With this contention we do not agree. Even though it might be proper to do so, it is impossible to determine what part of such so-called excessive cost is due to the necessity of early completion of the work and what part is due to the high cost of materials and labor existing in those years.

The buildings undoubtedly cost more to erect than would have been the cost had they been erected at a period when material and labor were more normal. This, however, does not alter the fact that the amounts were paid as a part of the capital cost of the construction of the buildings and that under section 215(b) of the Revenue Act of 1918 no deduction may be allowed.

The petitioner further contends that the alleged profit on the disposition of the Canal Street property was not taxable but is in effect an exchange of property as contemplated under section 202 of the Revenue Act of 1918. We see nothing in the provisions of that section which has any application to the situation presented by the facts.

While the appeal purports to include the year 1921, no errors are alleged with respect to that year, nor does it appear that the Board has any jurisdiction. *Appeal of Cornelius Cotton Mills,* 4 B. T. A. 255.

> *Order will be entered dismissing the appeal as to 1921. Decision redetermining the deficiency for 1920 will be entered on 15 days' notice, under Rule 50.*